IN THE UNITED STATES DISTRICT COURT OF MARYLAND
(Northern Division)

LEVI B. MILLER, IV                                          )
4705 Harvest Woods Court, Unit E          )
Fairfax, VA 22033                                        )
                                                                       )
                              Plaintiff,                        )
           v.                                                      )
                                                                       )          Civil Action No. _____
MCDONOGH SCHOOL, INCORPORATED    )
8600 McDonogh Road                               )
Owings Mills, MD 21117                            )
                                                                       )
Serve: Jennifer L. Curry                             )
100 Light Street, 19th Floor                         )
Baltimore, MD 21202                                )
                                                                       )
                              Defendant.                    )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Overview of the Case

1.       Plaintiff Levi B. Miller, IV ("plaintiff") here sues defendant McDonogh School, Incorporated ("McDonogh" or "school") for substantial monetary damages arising from the serious harms and injuries he suffered when he was a middle school boarding student at McDonogh (1966-1970). During plaintiff's years at McDonogh, the school's Dean of Students was Alvin J. Levy (deceased). As the school later acknowledged, its administration and board knew that Levy had been abusing McDonogh students for years prior to plaintiff's enrollment there in 1966. Rather than removing Levy and protecting plaintiff (and others), the school covered up this knowledge and allowed and enabled Levy to abuse plaintiff. McDonogh breached its obligation to plaintiff to protect him from harm.

<u>Parties</u>

2.      Plaintiff Levi B. Miller, IV is a citizen of the Commonwealth of Virginia, residing at 4705 Harvest Woods Court, Unit E, Fairfax, VA 22033.

3.      Defendant McDonogh School, Incorporated is a private, coed pre-K-12 school in the State of Maryland (a Maryland "citizen"), located (residing) at 8600 McDonogh Road, Owings Mills, MD 21117.

<u>Jurisdiction and Venue</u>

4.      Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this case because there is diversity of citizenship between plaintiff (Virginia) and defendant (Maryland), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1391(b)(1) & (2), venue is proper in this Court both because defendant resides in this district and because a substantial part of the events and omissions giving rise to this case occurred in this district.

<u>Statement of Facts</u>

<u>Plaintiff's attendance and residence at McDonogh and the abuse he suffered there</u>

5.      Plaintiff began attending and boarding at McDonogh at the young age of 10, a 5th grade student in 1966, and he remained as a boarding student there through 1970. At that time, McDonogh was an all-male semi-military academy.

6.      As a boarding student, plaintiff was in the care and custody and subject to the authority of the school twenty-four hours of every school day and most weekends for four years. Plaintiff was entitled to the school's protection, and the school had a duty to provide it.

7.     Plaintiff was placed in Finney Hall, where 5th and 6th grade students were housed. Faculty members and administrators lived in Finney Hall as well. The faculty, such as Levy, had unfettered access to the students' rooms.

8.     At the time of plaintiff's attendance at McDonogh, he was the youngest boarding student.

9.     Plaintiff was not assigned roommates. He was isolated and alone.

10.    Plaintiff came from a broken home, with parents who were often not available to care for him, but McDonogh led them to believe that the school was properly sheltering and caring for plaintiff. Instead, while at McDonogh, plaintiff spent every weekend alone. Most weekends he was the sole student in Finney Hall. He had no supervision and was left completely unattended other than at mealtimes.

11.     Levy lived in an apartment in Finney Hall, on the same floor where plaintiff boarded. Levy had unfettered physical access to plaintiff's room and to plaintiff.

12.    In mid-October 1966, plaintiff was often the only student in 5th or 6th grade who remained at Finney Hall for weekends. On multiple weekends, plaintiff was awakened by Levy. Levy held plaintiff down while he sodomized and raped plaintiff. Plaintiff experienced terrible pain. Levy caused plaintiff's skin around his anus to tear and bleed. Plaintiff's resistance was futile.

13.    After the incidents, plaintiff bled and experienced extreme pain when using the bathroom, walking, marching, drilling, running and engaging in all physical activities.

14.    Levy's predatory sexual conduct was known to and discussed among McDonogh board members, administrators, and faculty. McDonogh board members, administrators, and

3

faculty also knew or should have known of Levy's predatory sexual conduct over the years plaintiff was a student at the school and boarding there.

15.     Levy's position of Dean of Students was a senior position in McDonogh's administrative structure. By definition and design, holding the position of Dean of Students gave Levy significant power and authority over McDonogh's students' lives and their experience at McDonogh. This power is especially strong and its abuse exponentially felt in the case of students, like plaintiff, who boarded at the school.

16.     Flaunting and exploiting his badge of authority as Dean of Students, Levy exploited and abused plaintiff. By force and over plaintiff's clear resistance, Levy victimized plaintiff, a young student, to extract Levy's version of pleasure or satisfaction. On multiple occasions over the years 1966-1970, Levy sexually assaulted plaintiff and violated his bodily integrity.[1]

17.     Levy's sexual assaults violated plaintiff's personhood, the integrity of his body, and his sense and ability to exercise control and agency over his life and body.

18.     McDonogh knew of the harm Levy could cause because the school knew of his conduct prior to plaintiff's enrollment in 1966. Despite this knowledge, McDonogh's board, administration, and faculty took no action to remove or restrain Levy. McDonogh did not do the most obvious thing it could have and should have done: remove him from the school. Instead of cutting the cancer out, the school, board members, administrators, and teachers, chose – and it was a choice – silence and inaction (complicity). The school and its legally responsible officers and agents were confronted with the blunt and ugly fact that McDonogh was and had been inhabited

---

[1] Maryland's recent Child's Victim Act (effective October 1, 2023) abolishes the statute of limitations for the claim stated in this complaint. The Supreme Court of Maryland recently upheld the constitutionality of that Act.

and infected by an active, aggressive, repetitive sexual predator (Levy) whose prey of choice was young male McDonogh students. McDonogh's collective silence and inaction enabled Levy's horrific conduct to continue. Starting as early as 1966, plaintiff became the next involuntary recipient of Levy's abuse and exploitation.

Plaintiff's harms and injuries

19.     Plaintiff suffered immediate harm and injury as a result of Levy's attacks and McDonogh's inaction and complicity. These injuries are ongoing and life-altering. The direct and proximate cause of these injuries is the actions of Levy and the actions, inactions, and negligence of McDonogh. McDonogh knew that its Dean of Students had been engaging in wrongful student-destroying sexual misconduct.

20.     Plaintiff suffered severe and extreme emotional distress during and after these school years. Plaintiff's four years at McDonogh were years of shame, horror, fear, abuse and intimidation. McDonogh was then and is now a dark place for plaintiff. The school haunted him then and it haunts him now. He was overwhelmed and scared by the totally unchecked and unpredictable power Levy had over him. Plaintiff was ashamed of his "relationship" with Levy as if plaintiff had somehow caused or contributed to Levy's conduct and behavior.

21.     The aftermath of this abuse led plaintiff down a path of substance abuse, homelessness, and countless other personal and professional challenges.  Levy's abuse caused plaintiff to suffer severe emotional distress, chronic depression, and post-traumatic stress disorder, which eventually led to plaintiff's attempted suicide in 2005, for which he was hospitalized for several days, spent weeks in in-patient treatment, and many months in a residential therapeutic recovery program. Plaintiff required years of therapy and medications to treat the emotional

turmoil caused by Levy.  Plaintiff ultimately was admitted to the Maryland State Bar, although that was delayed by several years because of his bouts with substance abuse as a result of Levy and McDonogh's conduct.

22.    Plaintiff also suffers from difficulty in trusting others, particularly those in authoritative positions, *e.g.*, teachers, law enforcement officials, doctors, therapists, and most tragically, his parents; feelings of helplessness and hopelessness; depression; inability to manage stress or pressure, loneliness, inability to find purpose in life; self-harm and self-destructive conduct resulting in physical harm.

23.    Long after plaintiff left the school in 1970, McDonogh acknowledged Levy's history of sexually abusing students and the school's failure to act on information it had at the time of Levy's conduct, including when plaintiff was a student.

Plaintiff attempts to seek justice for Mr. Levy's actions

24.    In 1992, Levy was indicted on charges of sexual abuse. Plaintiff was in contact with Scott Schellenberger, Assistant State's Attorney for Baltimore County in furtherance of that prosecution, and plaintiff agreed to serve as a potential witness for the State.  Levy died prior to the disposition of the charges against him.

McDonogh's highly belated disclosures

25.    More than forty years after plaintiff left the school, on November 7, 2016, McDonogh informed alumni and others that Levy, the school's long time former Dean of Students who had repeatedly sexually attacked and abused plaintiff, had previously been indicted on charges of sexual abuse. This indictment, the school confirmed, was issued in 1992, twenty-four years prior to the school's communication. McDonogh has not explained its truly extraordinary and

plainly calculated delay in reporting the "news" of Levy's indictment to potentially affected parties. While Levy died prior to the disposition of the charges against him, the school subsequently reported that Levy had no intention to contest the charges.

26.    McDonogh's 2016 letter stated that McDonogh, for its part, intended to conduct an outside investigation of matters related to Levy. Almost three years later, this investigation was completed. The investigation included confirmation of what had been long known in and around the school, including by board members, administrators, and faculty, regarding Levy's sexually abusive actions. The investigation determined that "Levy and [another] engaged in sexual misconduct with 19 [known] male students—*Mr. Levy from the 1940s through the 1980s*." (Emphasis added.)

27.    As the investigative report makes clear, Levy's sexual misconduct was known to responsible McDonogh officials and McDonogh took no action: "some of these allegations were reported to the School at the time, and it is now clear from the completed investigation that then-active School Administration officials and members of the Board of Trustees failed to take appropriate action when these allegations were first reported more than three decades ago."

28.    The school was aware that Levy had been engaged in sexual misconduct with male students for two decades before he engaged in sexual misconduct with plaintiff.

29.    McDonogh acted with reckless, if not deliberate, indifference toward plaintiff and failed to act to protect plaintiff from harm notwithstanding its knowledge of the risk that Levy's presence on campus and in dorm rooms presented to plaintiff (and others). This failure to act was a breach of the school's duties and obligations to plaintiff. With calculation and deliberate intent,

McDonogh strategically delayed for twenty-four years the disclosure of Levy's indictment and then delayed for three years the completion/release of its investigative report.[2]

<u>Claim for Relief – Negligence</u>

30.     Plaintiff here adopts and incorporates by reference every fact and allegation contained in ¶¶ 1-29.

31.     Plaintiff was, for four years, a student at McDonogh. Plaintiff boarded at the school all four years. McDonogh owed plaintiff a duty of reasonable care and protection during those four years. McDonogh breached its duty of care and protection and, as a direct result of that breach, plaintiff suffered and continues to suffer great harm and damage, as detailed above.

32.     McDonogh breached its duty of care to plaintiff by: negligently hiring Levy, including failing to properly and adequately vet him and his history prior to his hiring; negligently failing to oversee, monitor, supervise and discipline Levy after his hiring; failing to investigate credible and repeated statements, allegations and reports of suspected incidents of Levy's abusive improper sexual conduct with McDonogh students; failing to investigate allegations and reports that the school's Dean of Students was sexually abusing the school's students and had been doing so for decades; failing to act upon reports and information that the school, including its board members, administrators, and faculty, had about Levy's multi-decade history of sexual abuse of and improper "relationships" with McDonogh students; failing to limit or prevent Levy's access to plaintiff, including in his dorm room; failing to have necessary monitors in plaintiff's dormitory

_____

[2] McDonogh's explanations for these delays will be a subject for future discovery. Plaintiff strongly suspects that the delays were intentional and strategically calculated to create, if possible, statute of limitations problems for plaintiff (and other similarly wronged McDonogh students). *But see* n. 1 supra (Maryland Child Victim's Act bars limitations as a defense here).

to prevent Levy's access to plaintiff; failing to take disciplinary or corrective action with respect to Levy despite the school's knowledge of his actions and misconduct; failing to report what the school knew or had good reason to strongly suspect about Levy's sexually abusive actions to appropriate law enforcement authorities, thereby allowing Levy's misconduct to continue and at plaintiff's expense; by allowing Levy to be a continuous threat to plaintiff's bodily integrity, health and safety; by failing to warn plaintiff and his parents of Levy's sexual proclivities; by failing to promptly conduct a post-indictment investigation of Levy; by failing, upon notice of Levy's conduct, to remove Levy of any and all positions and responsibilities at McDonogh and barring him from the campus forever.

33.    McDonogh's actions and inactions breached the school's duty of care to plaintiff. McDonogh was required to act with the degree of reasonable care due as a private school that provided boarding and where plaintiff (and others) boarded. Here, McDonogh acted with reckless, if not deliberate, indifference. McDonogh's multiple breaches of its duty created the foreseeable risk that plaintiff would suffer harm and damage.  Plaintiff was a foreseeable Levy victim and McDonogh failed to take reasonable actions under the circumstances to prevent Levy's access to plaintiff. The direct and proximate consequence and result of McDonogh's breaches of duty and failures to act was that plaintiff became Levy's victim. Levy's sexual abuse of plaintiff and all the resulting harms and injuries to plaintiff were the foreseeable, if not inevitable, proximate result and consequence of McDonogh's numerous failures and breaches of its legal duties.

34.    As a direct and proximate result of McDonogh's negligence and breaches of duty of reasonable care and treatment of plaintiff, plaintiff sustained and suffered physical, emotional, and psychological injuries, severe emotional pain, suffering and distress, chronic depression, post-

traumatic stress disorder, substance abuse, and an overall loss of enjoyment of life. Plaintiff's injuries began in his student years (1966-70) and have been and are ongoing and continuous to date. Plaintiff has sought care and treatment and may continue to do so. His injuries are serious, ongoing, and will continue for the balance of his life.

Prayers for Relief

WHEREFORE, based upon the facts to be proven at trial, plaintiff seeks substantial monetary relief, in an amount to be determined by the jury, plus available fees, interest and costs, and such other further and additional relief as the Court determines is just and proper.

Demand for Jury Trial

Plaintiff hereby respectfully demands a trial by jury.


Respectfully submitted,


*/s/ Ari S. Casper*
Ari S. Casper (Bar # 14512)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
Attorney for Plaintiff